Good afternoon, your honors. Ina Lipkin on behalf of the petitioner Bhupinder Singh. This matter has bounced from the Ninth Circuit to the board to the judge a couple times. The central issue here is did the petitioner establish either changed circumstances or extraordinary circumstances that would excuse the late filing of this asylum application? Now, the judge did find him credible and that finding has now been overturned by the board. And based on that credible finding, granted the petitioner the relief of withholding of removal and relief under the Convention Against Torture. When this case was before the Ninth Circuit in 2006, with the unopposed motion that the respondent filed, the board reviewed it again. And again, it found that the petitioner did not establish extraordinary circumstances because it determined that he waited too long, seven months, to file. I'd like to go over some of the dates with the court so we're on the same page what we're talking about to prevent confusion. Now, the petitioner entered the United States August of 1999 in a visitor visa that was to expire in March of 2000. Before the expiration of that visa, he filed for an extension. He didn't hear anything from what was then the INS. So before his request for the first visa was to expire, he filed a second visa extension. Again, it was March or April of 2000. So he was still in status, hadn't received a decision on the first visa request. Time went by that in August 17, 2000, the first visa extension was approved, which would have given him status until March of 2000. But since he was already in August, actually that was moot because he was already in invalid status. So in September, a month after he received the approval of the first visa extension, he learned that his wife had been arrested in India. She had never been arrested before. None of his other family members had been arrested before. And this new factor, he consulted with an attorney, and in November of 2000, which was two months after learning of his wife's arrest, which he argues is a changed circumstance, he filed for asylum. Now, the board in its most recent decision found that, let me also add that that second visa extension was finally approved up through February 15, 2001. So looking back, he filed for asylum November 2000, and he actually had status until November 15, 2001. Of course, when he filed, he didn't know that he still had status. Was there any dispute in the record that the wife was arrested? No. His testimony was never deemed incredible. That was part of his testimony. So we've got to, under Kalubi v. Inez or Kataria v. Inez, we've got to view that as, give it full weight. Why didn't the IJA or the board find that significant? They simply, well, the IJA said something to the effect that this testimony was maybe vague, but never deemed it incredible. And left it at that. Well, did the IJA ever deal with the arrest at all, specifically? I'm sorry? Did the IJA ever deal with the arrest at all, specifically? In what terms? In terms of it excusing the untimeliness? Right. It seems to me, if my recollection is right, and I'll check it, but the IJA talked about the settlement negotiations and said that they were vague. But I don't think, I don't recall that the IJA stated that that does not constitute a changed circumstance. The IJA just discussed that some implausibility in his point of view. Doesn't that make a difference? I mean, if you raise the issue and the IJA didn't rule on it, and we don't have the benefit of the IJA's reasoning. Then we can remand for that. But does the arrest of the wife constitute a changed circumstance in his application? Yes. We argued that in our first brief before the Ninth Circuit in 2006, and again in the second brief in 2007. So at all times we did raise that. So what are we looking for when we talk about changed circumstances? What's the changed circumstances that we're looking for? The changed circumstances that the interest of the police in the petitioner has now evolved and expanded beyond just him, but now to his remaining family members, most critically his wife. And their interest in forcing him to return in order not to keep arresting other family members. This didn't occur before September of 2000. So the petitioner is arguing two things. One, the wife's arrest is a changed circumstance, and he filed within two months of this event, and that should be reasonable. The court has recently decided April 5th of this year, the case of a Hora v. Holder, that was decided April 5th, 2001, and it was found to be reasonable. So this is identical in that sense. And then turning to the argument of extraordinary circumstances, the petitioner argues that, in fact, Section 208.4A.5, little IV, states that if you are in some sort of temporary or valid status, that tolls the period of the running of the deadline for filing. Well, it says you can't, that that is a circumstance that one can consider. Yes, it may be considered. So the problem the board had with that is the board said, well, that's not directly related to the reason for filing. How do you respond to that? I think the board misconstrued the argument completely. The board stated that instead of looking at the approval of the second extension, which would have put him in status until February 15, 2001, making his filing time in, which was November 2000, a couple months before that, they were looking at the expiration of the first extension, March 2000. That would have made his filing, his filing would have been seven months, November 2000. Seven months after that expiration. So it's true that while the petitioner filed for asylum in November, he did not know whether his first extension, he didn't know whether his second extension was granted. That's true. But he had filed for an extension, he had the full expectation that it would be granted, as his first one was granted in August. He filed in November, so he already assumed that since his first one was granted, that his second one should be granted as well. But the board didn't look at it that way. They strictly looked at the March 2000 date and found, oh, he filed seven months too late, and seven months is too late. Without really stating what would have been reasonable. Two months, three months, six months, what would have been reasonable, they just don't talk about that. I have a little under two minutes left, if you want to reserve. I will, thank you. If you'll excuse me one minute, I forgot to turn off my cell phone, and that would be very embarrassing for me. Is that an attorney's indulgence instead of court's indulgence? Very good, go ahead. Good afternoon, Your Honors, and may it please the Court, Michael Heiss on behalf of the Respondent, the Attorney General of the United States. Something that hasn't come up yet is that the Court lacks jurisdiction over application timeliness issues if the underlying facts are in dispute. And what we have here is a question of whether or not the status situation of Mr. Singh was actually in dispute. And whether or not the status situation of Mr. Singh was actually directly related to his delay. Why is that a factual dispute? The facts, we know the facts. It's a question of the application of a lot of facts. Not quite as to the directly related point, because he's newly claiming that he released his brief to the Board, claimed for the first time that his status situation was directly related to his delay. And what he said before the IJ and what the Board cited in his decision was that he waited to file for asylum in order to be able to file for asylum. Because he intended, fully intended to go home and had no intentions to stay at all until his wife was arrested. It was only his wife's arrest that triggered his filing. I'm not sure I quite understand the Board's logic on that, and maybe you can help me out. I mean, they seem to insist that the status had to be directly related to the reason for filing the asylum application. I'm not sure I quite read the statute or the regulation that way. Because we're talking about the reason for, or an excuse for the delay. And the two seem different to me. You may have a different reason for filing. You may have a separate reason for the delay in filing. And the Board seemed to conflate the two. The inquiry goes to the language of the statute and the regulation in concert in terms of what the Board, or what the IJ has to look at in reaching a conclusion. And whether or not something is directly related has to do with what the alien says is the reason for what they did. Well, or the reason for not filing timely. You know, the Board said, you filed your asylum application because your wife was arrested. And that has nothing to do with the fact that you were in valid status. But if you look at the regulation and the examples that they, or they give on what justifies a delay, they talk about sickness, which would not have to do anything with the, directly relate to the reason for filing an asylum application. It couldn't. And they list a whole other set of reasons that would have nothing to do with the filing of the, the reason for filing the asylum application. So why do you think that we should say that the reason, the status has to be directly related to the reason for the filing of the asylum application, as opposed to an independent excuse for justifying the delay? It's a long-winded question, but I hope you catch my drift. It's a difficult question to answer, Your Honor. Let me put it another way. You've got sickness, of course. That's not a reason for filing. You go right down, right down the regulation. Reason for delay. Reason for delay. And the same thing is true for, for status. Yet the Board said, you filed because of the arrest, not because of status. And therefore, we can't count status. I don't understand the Board's reasoning. But with Your Honor's example of sickness, that's the reason for the delay. His status was not the reason for his delay. That, that makes sense in terms of why. Let me put it, of course, another way. When would status then ever be a reason for a delay if we followed the Board's logic? It comes close to, to the situation here. It's where perhaps an alien might think he doesn't need to seek asylum because he's going to be allowed to stay. Right. So he thinks, he thinks he's going to be allowed to stay. Or he wants to go back at the end of his visa. And his wife gets arrested. And he says, boy, I'm not, I don't want to go back. I want to seek asylum now. What's wrong with that as an argument justifying the delay? Not necessarily anything wrong with it. He just needs to claim it and prove it. The alien bears the burden of establishing why he waited. And he simply didn't argue this before the immigration judge. He only raised it before the Board. And so the agency is left to consider why he's, his stated reasons for the delay. And again, all of this comes down to whether substantial evidence supports all of these things. And that in and of itself becomes a factual inquiry. So, so in your view, what was the stated reason for the delay? Two stated reasons. One, he didn't intend to go home. And then he filed late because his wife was arrested. So. Status was irrelevant. So, so your view is status was irrelevant. To him. I mean, it's a, it's a potentially viable argument, certainly. It's something he could have said. He could have argued. Well, he did say it in front of the Board. I'm sorry? He did say it in front of the Board. So it's exhausted. I'm not, I'm not going to exhaustion it, but in terms of the meeting his burden of proof. But if he said it before the Board, then why isn't that sufficient to, to give him relief? On that basis. The question then becomes whether what he said is enough. It's, it's viable. And then that gets into the substantial evidence inquiry that the record must compel a contrary conclusion. So. It must show that his status was directly related to the delay. He, he needed to prove that. Well, that's not what the Board said. The Board said it wasn't related to his filing of the application. Yes. That's the problem. Unless I'm reading it wrong. It's a question of what he presented to prove his case. And the Board said that he, the only thing he presented to prove his case was that he delayed filing. Or not even that he delayed filing. He only filed at all because his wife was arrested. His status had nothing to do with it. On page three of the record, I'm looking at the Board decision. The Board decision says, moreover, his assertion that being in non-immigrant status was directly related to his late filing is in contrast to his testimony before the immigration judge that he did not file because of the arrest of his wife. What is that saying to you? What, what ruling is the Board making in that statement? That is saying to me, to me, that he failed to prove that his status had anything to do with his delay. He had to prove that it was directly related. And he said, the quotes are, I had not come here deciding that I will remain here. I had no idea or intention of living here permanently. And I have no other reason in mind. That's the administrative record, page 243 and 244. But then it goes on to say, it was the arrest of his wife that triggered his application. Not because he was in lawful non-immigrant status. And that's the part I don't understand because I can't conceive of a circumstance where somebody's in lawful non-immigrant status and that would trigger an asylum application. That's not a basis for seeking asylum. Well, it could trigger a delay. It could. Yeah, but that's not what the Board said. That's the puzzling part of it. Let me, let me ask you a different question. Why isn't it sufficient to, that an arrest, some new evidence, could trigger a new application? Why isn't that enough? It's not that it couldn't. It's that it didn't here. This is a case-by-case, again, substantial evidence inquiry. And with respect to the Vahora case, I'd like to point out that that was not 28-J. I'd only learned of it today and only had five minutes before session began here to review it. But the facts in that case are completely distinct from this in that that was a massive change in country condition circumstances on one hand, but also involved a true wholesale change in conditions. Now, his wife being arrested, yes, that's a substantial event. It's not inconsequential by any means. And, you know, I'm thinking that it's country conditions change, not change to his relative. That was the part that concerned me a little bit. His wife being arrested constitutes a country condition change? No. I'm saying it doesn't constitute a change in country conditions, which is what I generally thought was contemplated by the change in conditions. It's actually both, Your Honor. It does allow for changes in personal circumstances. In his personal circumstances, but does it allow for changes in personal circumstances of those other than himself? That's a very curious question. I did think about that myself as well. I come to the conclusion that it would be fair, at least for the court or the board and the IJ to consider that, given that it's his family and they were – she was, from the sound of things, only arrested because of him. That seems fair, I would say, to consider. In terms of this, in any event, being an equitable consideration, whether something is substantial, whether it's enough to allow for this type of discretionary conclusion. But the main point is that it has to materially affect his eligibility for asylum. And it certainly is a factor. It's certainly something that the agency, the IJ, could have looked at to say, yes, you're eligible for asylum. It could help. It actually didn't here. The immigration judge, as Your Honor mentioned, there really isn't a whole lot of discussion of her arrest and his decision. Another question is that, given that that seems to be the central point here and we don't have the view of the immigration judge, why shouldn't we remand for reconsideration? That would be appropriate if that was necessary. Definitely something for the IJ to consider. The facts were before the IJ and the judge discussed them and the facts as presented were enough for withholding. It's just that the arrest and everything else that he considered cumulatively, which actually is, if I had it here, page 183 of the record. He addressed all of the factors as to his decision. But on that point, did the IJ use the correct standard when deciding whether or not there was changed circumstances? I believe so. Did he use clear and convincing proof? I don't remember, Your Honor. I can grab the decision. But I believe it's ultimately a case-by-case determination. But the standard of proof doesn't change. Yes. The alien has to prove, by clear and convincing evidence, that he merits the acceptance. I think the clear and convincing evidence only goes to the fact of the timing. I'm not sure I understand the distinction. Ultimately, the question is whether the regulation makes the distinction that you have to prove by clear and convincing evidence that it was timely foul. But in determining whether or not there's changed circumstances, it just has to be proof to the satisfaction. Yes. That's a discretionary determination. You're correct. But that's not what the IJ said. It said by clear and convincing evidence. So wouldn't that be a basis to remand for the IJ to apply the correct standard? First of all, I don't recall Fisher making this argument. Second of all, if that is the case, yes, that would be a case for remand. Right. Because the IJ said the Petitioner's claim, I found the Petitioner credible. I think he suffered past persecution. But the Petitioner didn't show by clear and convincing evidence that he was entitled to relief. When, in fact, that's not the right standard. The standard is clear and convincing evidence that it was timely fouled, and that wasn't his argument. He said, I know it's untimely. I'm just asking for an excuse. So it would seem to me, just looking at the IJ's, and I agree, it's not a model of clarity, but in looking at the IJ's written decision, it would seem the IJ made an incorrect analysis. Well, also, ultimately, it comes down to whether or not the delay was reasonable. And there was a lot of discussion of timing here, and status changes, and what have you. But ultimately, that's why. Why isn't a three-month delay reasonable? It could be. But substantial evidence has to support that it is. Do you find it ironic that the government took a year to respond to his visa petition, six months to respond to his second visa petition, and is arguing here that a three-month delay is unreasonable? It's different standards for different volumes of paperwork that have to be pushed back and forth between people, Your Honor, unfortunately. There are inherent delays in this system. This is a 2007 petition for review of a 2006 board case. It varies by circuit. It varies by agency. There's certainly been class action litigation on delays and what have you and things like that. But ultimately, what it comes down to for the purposes of the bar that Congress imposed, the one-year bar that Congress put in place for filing for asylum, and the exceptions to it, requires that type of give and take in terms of the timing. It has to be reasonable, and that's a determination for the agenda. You just suggested that six months is presumptively reasonable. This is three. It's maybe three. The problem, and that's what the board discussed, is it could be three, but it was more likely seven. He had no way of knowing when he filed for his second extension that it would, in fact, be approved. He was automatically out of status. It was never out of status. He actually was out of status automatically on September 25, 1999. In the eyes of law, he's always been in lawful status. Is that true? In the eyes of law, he's always been in lawful status. True? No. Automatically. September 25, 1999, when he overstayed his visa, he became an overstate. He did not apply. It was six days. No, no. I understand that. This is arguing over nothing. But then the government granted his visa, so he was retroactively in status. Retroactively, yes. Yeah. But the Court has to look at what the IJ considered and the board considered in terms of the delay. Why were these things happening the way they were? And at the time he filed, he had no way of knowing that the board would approve his second extension. Our questions have taken you over your time. Do you have any more questions? I apologize for exceeding my time. No, no. It's our fault. Thank you, Your Honor. Your Honors, I just want to address a couple points briefly. There was the issue of whether the problems that the wife faced really constitutes a changed circumstance. But the Ninth Circuit has always held that a changed circumstance could mean that it's an increase in the kind of risk that the petitioner already had. You could look at FACRI, F-A-K-H-R-Y, versus Mukasey for that proposition on page 1063. The site is 524 F-3rd. So certainly it doesn't have to be something personal. But that involved changed circumstances in the country, country conditions. Right. But this is a changed circumstance with someone other than himself as a relative. So I'm not sure that that case helps you very much. Well, the point Petitioner wants to make is that the interest of the police in the petitioner he thought had maybe subsided since the time he departed India and the time he spent here. So the renewed interest in him and the escalation of harm that was then projected onto his wife, that constituted the change in the fact that the police not just renewed their interest in him but increased their efforts in finding him, now targeting other family members. I'm not familiar with the case of Mutuku v. Holder, a 2010 case, 600 F-3rd, 1210. That case appears to say that a hope that conditions would improve in the country does not constitute changed circumstances. Right. And if the police simply continued to come to his house and inquire where is he, then I think he would lose that argument. But the fact that they had stepped up their efforts by targeting his family members whereas before they had never done so, that would constitute a changed circumstance. It sort of seems like the same argument he made for asylum in the first place. I mean, basically that the police had targeted him. Well, this court and the board has repeatedly found that, again, an increase in the interest of the police or, in other words, an increase in the amount of harm that a petitioner may face constitutes a changed circumstance. And certainly on a case-by-case basis, looking at all the facts, an I.J. can make that determination. Here the I.J. did not determine that it did not, that's two negatives, constitute a changed circumstance. And given that his testimony is found credible, we've got to look at it cumulatively as finding that, yes, the police did come to inquire about the wife, and he stated that that was the reason that he filed late, and that's got to be given full weight. Now, I want to also turn to the congressional intent and the 208.45 statute. It doesn't matter whether he testified to the judge that, yes, the reason why I delayed in filing was because I was in status. He doesn't have to say that, and the statute doesn't ask him to state that. It's really in the form of a legal argument that a petitioner can make, stating, well, I wasn't able to file on time. One of the reasons were I was in status. And as the court had just stated, retroactively, he was in status, whether he made that argument to the court or not. His official status expired February 15, 2001. And there's no such thing as he was out of status for six days or ten days or six months, because as the government makes clear, once you're out of status, they never renew your status. So it's the sort of quasi-status that a person finds themselves in when they're asking for an extension and they're waiting for the answer. Well, I suppose. But I think that perhaps the BIA's argument and the government's argument is somewhat different. It's that if we're looking at the justification for delay and if you're basing that on status and you haven't filed during the status period, then maybe that reason for an excuse for delay shouldn't be given so much weight. Well, you know, if he waited to file until 2003 or 2002, well, after that February 15, 2001 date, I think the government would have a strong argument. But he was still waiting for the decision, and he had every reason to think it would be extended based on the fact that the first request was granted. Thank you. Thank you, counsel. Patients are going to be submitted for a decision. Thank you both for your arguments.
judges: Carney, Thomas, Rawlinson